# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOSE JAVIER FLORES,

     **Plaintiff,**

 v.                            **Case No. 26-CV-280**

JEREMY WILTZIUS, *et al.*,

     **Defendants.**

---

## ORDER SCREENING THE COMPLAINT

---

On February 19, 2026, plaintiff Jose Javier Flores, who is incarcerated and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (ECF No. 1.) He also filed a motion for leave without prepayment of the filing fee. (ECF No. 2)

The court has jurisdiction to resolve Flores's motions and screen the complaint in light of Flores's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

## MOTION FOR LEAVE TO PROCEED
## WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because Flores was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 19, 2026, Flores filed a motion for leave to proceed without prepayment of the filing fee. (ECF No. 3) That same day, the court ordered Flores to pay an initial partial filing fee of $17.30 by March 23, 2026. (ECF No. 6.) Flores paid the fee on March 4, 2026. The court will grant Flores's motion for leave to proceed without prepaying the filing fee. He must pay the filing fee over time in the manner explained at the end of this order.

## SCREENING THE COMPLAINT

*Federal Screening Standard*

The Prison Litigation Reform Act (PLRA) applies to this case because Flores was incarcerated when he filed his complaint. The PLRA requires courts to screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious,"

2

that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

3

*Flores's Allegations*

Flores alleges that while incarcerated at Kettle Moraine Correctional Institution (KMCI), on August 11, 2025, he was asked to produce a "cause urine analysis to be tested for drugs and alcohol." (ECF No. 1 at 2.) Flores complied with the request and provided the sample. (*Id.*) The test came back indicating Flores tested positive "for a substance", and he was taken to the Restricted Housing Unit (RHU) pending investigation. (*Id.*)

According to Flores, if a prisoner tests positive for a substance, he "has the option to send the urine sample to a certified lab for final confirmation, at his or her own expense unless the prisoner in their care is in a treatment program, then a confirmation test is required." (ECF No. 1 at 2-3.) Flores is in an Earned Release Program, so he informed staff that he wanted to send his sample to a certified lab for confirmation. (*Id.* at 3.)

On August 12, 2025, the certified lab results came back and showed that Flores was negative for all substances. (ECF No. 1 at 3.) According to Flores, when the certified lab results come back negative, a prisoner should be released back into general population and back into the Earned Release Program. (*Id.*) Also whatever conduct report that was issued in the wake of the initial positive should be dismissed according to policy. (*Id.*)

Instead, defendant Captain Jeremy Wiltzius refused to release Flores back into the general population and his Earned Release Program, keeping him in RHU. (ECF No. 1 at 4.) He also wrote Flores a "major conduct report" for "use of

4

intoxicants." (*Id.*) Flores alleges that in the conduct report, Wiltzius "expresses a theory as to why the confirmation results may have been negative." (*Id.*)

On August 18, 2025, defendant Security Director Nicholas Tennessen reviewed the conduct report and approved it to be processed as a major conduct report. (ECF No. 1 at 4.) Tennessen knew that the confirmation test came back negative, but he still emailed Wiltzius and other staff members, "We can rely on more than one piece of evidence to get us to an outcome. I also support what Jeremy stated below where our thresholds of our testing with inside department is going to be different than a clinic." (*Id.* at 5.) Tennessen further stated in the email, "I understand that we have policy's [*sic*] and they are there for a good reason, but policy's [*sic*] do not cover every aspect of our duties." (*Id.*) Flores alleges that knowingly disregarding policy violates his due process rights. (*Id.*)

Flores plead "not guilty" to the conduct report and opted for a contested hearing. (ECF No. 1 at 6.) The hearing took place on August 27, 2025, and defendant Lieutenant Gene Wierzba was the hearing officer. (*Id.*) Wierzba read the conduct report out loud. (*Id.*) The confirmation test results were also introduced as evidence. (*Id.*) Flores also testified that the confirmation test came back negative and that he should have been released back into general population and his Earned Release Program. (*Id.*) Wierzba found Flores guilty of use of intoxicants and gave him 90 days in segregation. (*Id.*) The next day, August 28, 2025, Flores was terminated from the Earned Release Program, which he notes was given to him by the judge at his sentencing. (*Id.* at 6-7.)

5

On August 31, 2025, Flores appealed the contested hearing decision to defendant Deputy Warden Timothy Gessner. (ECF No. 1 at 7.) Gessner reviewed the appeal and found that the finding of guilt "was appropriate." (*Id.*)

*Analysis*

Liberally construing Flores' complaint, he claims that the defendants violated his due process rights under the Fourteenth Amendment when they issued and/or upheld the conduct report despite the negative confirmation test.

"A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)). Flores alleges he suffered a deprivation of liberty interests when he received 90 days in segregation and was removed from the Earned Release Program.

Placement in segregation may create a liberty interest "if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Flores fails to allege his 90-day stay in segregation implicates a liberty interest because the duration is too short and he does not allege that he experienced unusually harsh conditions. *See Beamon v. Pollard*, 711 Fed. Appx. 794, 795 (7th Cir. 2018) (135 days does not deprive an inmate of a liberty interest without allegations of unusually harsh conditions).

6

Removal from the Earned Release Program also does not implicate a liberty interest. In Wisconsin, the Earned Release Program is a discretionary parole program, which does not create a protected liberty interest. *See Austin v. Novak*, Case No. 14-cv-608-bhl, 2021 WL 1531568 at *8 (E.D. Wis. April 19, 2021); *Brady v. Jess*, Case No. 18-CV-1162, 2018 WL 5251751 at * 3 (E.D. Wis. Oct. 22, 2018). Because Flores does not allege a protected liberty interest, he fails to state a claim under the Fourteenth Amendment.

Although courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so where the amendment would be futile. *See Boyd v. Bellin*, No. 20-3087, 2021 WL 479769 (7th Cir. Feb. 10, 2021). Flores's complaint is thorough in its allegations of facts surrounding this claim, so the court finds that further amendment would be futile.

**THEREFORE, IT IS ORDERED** that Flores's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of Flores shall collect from his institution trust account the $332.70 balance of the filing fee by collecting monthly payments from Flores' prison trust account in an amount equal to 20% of the preceding month's income credited to Flores' trust account and

7

forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Flores is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Flores is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a

8

reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 24th day of June, 2026.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge

9